Rel: July 17, ,2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2025-0702, CL-2025-0703, CL-2025-0704, CL-2025-0705, and CL-2025-0706

_____

### K.W.

v.

### B.P., T.S.P., and B.M.P.

### Appeals from Lee Juvenile Court
### (JU-17-515.02, JU-17-515.03, JU-17-515.04, JU-17-515.05, and JU-17-515.06)

_____

### CL-2025-0901

_____

### Ex parte K.W.

## PETITION FOR WRIT OF MANDAMUS

### (In re: Matter of N.R.S.W.)

### (Lee Juvenile Court: JU-17-515.07)

FRIDY, Judge.

These appeals and this petition for a writ of mandamus arise from a dependency and custody dispute between K.W. ("the mother") and T.S.P. and B.M.P. ("the custodians") regarding N.R.S.W. ("the child"). The child has lived with the custodians since 2019, and they are attempting to adopt her. Appellee B.P. is the child's paternal grandmother ("the grandmother"), who had legal custody of the child before she went to live with the custodians.

The Lee Juvenile Court ("the juvenile court") entered an order of dependency and custody on August 11, 2025, finding that the child remained dependent and vesting sole legal and physical custody of the child in the custodians. Several appeals have been taken as to that order. Because we conclude that the order was not final, we dismiss each of the appeals as being from a nonfinal judgment.

The mother's petition for a writ of mandamus involves a separate action that the custodians initiated in the Lee Probate Court ("the probate court") to adopt the child; that action was transferred to the

CL-2025-0702, CL-2025-0703, CL-2025-0704, CL-2025-0705, CL-2025-0706, and CL-2025-0901

juvenile court. For the reasons set forth herein, we deny the mother's petition.

Background

This matter began in December 2017, when the grandmother filed a dependency petition in the juvenile court. That action was designated as case no. JU-17-515.01 ("the .01 action"). In her petition, the grandmother asserted that the child, who was then three years old, and her older sibling, A.F.W. ("the sibling"), were dependent. On February 12, 2018, after an evidentiary hearing, the juvenile court entered an order in which it found that the child and the sibling had been exposed to domestic violence and that the mother and H.W. ("the father") had failed to provide for their material needs and education, among other things. Based on its findings, the juvenile court determined that the child and the sibling were dependent, vested legal and physical custody in the grandmother, and permitted the mother to have supervised visitation. The grandmother encountered some difficulties caring for the child and permitted the child to live in Georgia with the custodians without notifying the juvenile court. The child had remained with the custodians since going to live with them.

3

CL-2025-0702, CL-2025-0703, CL-2025-0704, CL-2025-0705, CL-2025-0706, and CL-2025-0901

After the juvenile court entered the judgment in the .01 action, several individuals initiated actions in the juvenile court, including case no. JU-17-515.02 ("the .02 action"), in which the custodians asserted that the child was dependent; case no. JU-17-515.03 ("the .03 action"), which appears to have involved the Lee County Department of Human Resources in its supervisory capacity; case no. JU-17-515.04 ("the .04 action"), in which a different member of the child's extended family asserted the child's dependency; case no. JU-17-515.05 ("the.05 action"), in which the mother petitioned to modify custody of the child; and case no. JU-17-515.06 ("the .06 action"), in which the grandmother petitioned to modify custody of the child. The juvenile court consolidated those actions and purported to resolve all of them in a single order that it entered in the .02 action on July 17, 2025. The juvenile court amended that order on August 11, 2025, to address the issue of child support.[1]

The petition for a writ of mandamus involves case no. JU-17-515.07, which is an adoption proceeding that the custodians filed in the probate court and that that court subsequently transferred to the juvenile court

---

[1]For ease of reference, we will refer only to the August 11, 2025, order throughout this opinion.

4

in June 2022 ("the adoption action"). The juvenile court did not consolidate the adoption action with the dependency and custody matters, and it has not entered a final judgment in that action although, in the August 11, 2025, order, it determined "that [the mother's] parental status should not be completely extinguished."

On May 11, 2026, this court consolidated the appeals and the mandamus petition ex mero motu.

## Analysis

## The Appeals

Before this court can address the merits of the mother's appeals, we must first determine whether the August 11, 2025, order is a final judgment. "The question whether a judgment is final is a jurisdictional question, and the reviewing court, on a determination that the judgment is not final, has a duty to dismiss the case ...." Horton v. Horton, 822 So. 2d 431, 434 (Ala. Civ. App. 2001). "[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu." Nunn v. Baker, 518 So. 2d 711, 712 (Ala. 1987).

In the August 11, 2025, order, the juvenile court identified the various actions that it said had been "consolidated into" the .02 action,

and it purported to reach resolutions of the claims presented in those consolidated actions, including purporting to dismiss the .03 and .06 actions. However, the .02 action was the only action identified by case number in the caption of the order, and it appears from the record on appeal that the juvenile court entered the order only in that action. In other words, while the order purported to resolve all the claims asserted in the .02 through the .06 actions, the juvenile court entered the order only in the .02 action.

It is well established that, when a trial court consolidates two or more actions, those actions do not lose their separate identities, and each action requires the entry of a separate judgment. Lindsey v. Pollard, 376 So. 3d 496, 502 (Ala. Civ. App. 2022) (citing League v. McDonald, 355 So. 2d 695, 697 (Ala. 1978)). See also Rule 42, Ala. R. Civ. P., and Ex parte Glassmeyer, 204 So. 3d 906, 908-09 (Ala. Civ. App. 2016) (recognizing that, in consolidated cases, although a trial court may specify that all filings be made in only one case, a final judgment must be entered in each separate case). Because the juvenile court did not enter the August 11, 2025, order in the .03 through .06 actions, that order, even though it referenced those actions, cannot constitute a final judgment as to those

6

actions, and this court does not have jurisdiction to consider the mother's appeals from those actions.

We turn now to the question whether the August 11, 2025, order, entered in the .02 action, was a final judgment sufficient to support an appeal in that action. In the order, the juvenile court explained that it had considered a significant amount of evidence in connection with the actions, and, regarding the mother, it ultimately found that she had made significant progress during the course of the litigation; that she had presented "today as a markedly improved individual compared to the person who first came before this Court"; and that, "[i]n light of her marked improvement, and her past visitation with the child," it would not terminate her parental rights.[2] The juvenile court continued:

> "That being said, [the mother] needs to ensure that she does not add additional drama or trauma to [the child's] childhood development in the [custodians'] home. These circumstances are the natural consequences of [the mother's] prior actions. She should do everything within her power <u>not</u> to make things worse. One way she can do this is by being supportive of [the child, the custodians], and their

_____

[2]As none of the actions to which the August 11, 2025, order was addressed involved a claim seeking to terminate the mother's parental rights, the juvenile court's determination that it would not terminate the mother's parental rights related to the custodians' adoption action, to which the mother had objected.

7

> relationship with one another. This Order is premised on the belief that [the mother] has progressed enough to do those things; to selflessly put [the child's] development and well-being above her own desires. If she refuses, it may be grounds for a reduction of access to [the child] or even adoption. In other words, as long as [the mother] can be supportive of [the child's] life with the [custodians], she can likely be a part of [the child's] life. If she causes more problems for [the child], access to [the child] may need to be reduced."

(Emphasis in the original.)

Based on its findings, the juvenile court awarded legal and physical custody of the child to the custodians, permitted the mother and the child to participate in joint counseling, and awarded the mother visitation with the child, with the following caveat: "The [juvenile] court also reserves jurisdiction to adjust visitation based on the circumstances until February 1, 2026, at which time, unless there is an intervening motion to reconsider visitation based on occurrences hereafter, this order of visitation shall be deemed final."

In Trevino v. Blinn, 897 So. 2d 358 (Ala. Civ. App. 2004), this court considered the finality of an order containing similar language regarding a parent's visitation with a child. In that case, the trial court's order provided that "the father's temporary custody will continue … 'until the matter is brought before the court on motion of either party for an order

8

of permanent custody' and that the mother shall have 'reasonable' visitation with the child '[p]ending <u>further orders</u>.'" <u>Id.</u> at 359. This court characterized the order as leaving "the parties' rights to custody and visitation for a final determination upon either party's filing a motion reviving the issue" in the trial court. <u>Id.</u> at 359-60. We then concluded that the trial court's order allowing the presentation of additional testimony was an indication that the trial court did not consider the case to be finally adjudicated on the merits after the entry of its postjudgment order, and, therefore, we held that the order was not sufficiently final to support an appeal. <u>Id.</u> at 360.

In this case, the juvenile court also left open the question of the mother's visitation with the child and invited the parties to file a motion to reconsider the visitation award within the next six months, indicating that, like the trial court in <u>Trevino</u>, it did not consider the .02 action to be finally adjudicated when it entered the August 11, 2025, order. Therefore, we conclude that the August 11, 2025, order is not final for purposes of appeal, and the appeal from the .02 action must also be dismissed. <u>Id.</u>

CL-2025-0702, CL-2025-0703, CL-2025-0704, CL-2025-0705, CL-2025-0706, and CL-2025-0901

<u>The Petition for a Writ of Mandamus</u>

On August 25, 2025, the mother filed a motion seeking the entry of a final judgment in the adoption action. She renewed her motion on October 1, 2025, asserting that the August 11, 2025, order addressing the dependency and custody actions had resolved the adoption action. On October 2, 2025, the juvenile court entered an order indicating that the adoption action was "reserved pending the final outcome of the other cases," i.e., the dependency and custody actions. That day, the mother filed a petition for a writ of mandamus in this court, asking this court to direct the juvenile court to enter a final judgment in the adoption action.

> "This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked. <u>Ex parte Mercury Fin. Corp.</u>, 715 So. 2d 196, 198 (Ala. 1997). Because mandamus is an extraordinary remedy, the standard by which this Court reviews a petition for the writ of mandamus is to determine whether the trial court has clearly abused its discretion. <u>See</u> <u>Ex parte Rudolph</u>, 515 So. 2d 704, 706 (Ala. 1987)."

<u>Ex parte Flint Constr. Co.</u>, 775 So. 2d 805, 808 (Ala. 2000).

We have no reason to believe that, once final judgments are entered in the dependency and custody actions, the juvenile court will not enter a final judgment in the adoption action, as it indicated it would in its October 2, 2025, order. In other words, we cannot say that the juvenile court has refused to perform its duty; instead, it has indicated when it intends to perform that duty. The mother has failed to demonstrate that the juvenile court is obligated to perform that duty earlier than it intends to, particularly given how the adoption action and the dependency and custody actions are intertwined. Therefore, the mother's petition for a writ of mandamus is premature and is due to be denied. See Ex parte Alabama Dep't of Hum. Res., 227 So. 3d 519, 521 (Ala. Civ. App. 2017.)

## Conclusion

For the reasons discussed, the mother's appeals from the .02 action, the .03 action, the .04 action, the .05 action, and the .06 action are dismissed as being taken from nonfinal judgments. The juvenile court is instructed to enter judgments consistent with this opinion. The mother's petition for a writ of mandamus in the .07 action is denied.

The custodians' motion to strike one of the mother's letter briefs is denied as moot. Their request for an attorney fee is denied.

11

CL-2025-0702, CL-2025-0703, CL-2025-0704, CL-2025-0705, CL-2025-0706, and CL-2025-0901

CL-2025-0702 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0703 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0704 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0705 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0706 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2025-0901 -- PETITION DENIED.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.